IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JENNIFER WHITE,<br><br>  Plaintiff,<br>v.<br><br>PAUL ZIRIAX, in his individual capacity,<br><br>HEATHER MAHIEU CLINE, in her individual capacity,<br><br>TIM MAULDIN, in his individual capacity,<br><br>MIGNON LAMBLEY, in her individual capacity,<br><br>  Defendants. | Case No.: 24-cv-631-J |

## DEFENDANTS' REPLY TO MOTION TO DISMISS

Defendants file this Reply to Plaintiff's Response [Doc.10] to Defendants' Motion to Dismiss the Amended Complaint. [Doc. 9]. In reply, Defendants would show this Court the following:

**PLAINTIFF HAS NOT MET HER QUALIFIED IMMUNITY BURDEN**

Plaintiff argues this Court should deny Defendants' Motion to Dismiss because she has alleged a viable First Amendment claim pursuant to 42 U.S.C. § 1983, arguing such should be a fact question. However, she still has not met her burden under *qualified immunity* standards. Plaintiff must plead a First Amendment free speech violation against **each** of the named Defendants

showing this Court that **each** named Defendant has violated "clearly established law." *See Ashcroft v. Iqbal*, 556 U.S. 662, 673, (2009) (internal citations and quotations omitted)("[T]he sufficiency of [plaintiffs] pleadings [are] both inextricably intertwined with, and directly implicated by, the qualified-immunity defense"); *City of Tahlequah v. Bond*, 595 U.S. 9 (2021) ("It is not enough that a rule be suggested by then-existing precedent: the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted."); *District of Columbia v. Wesby*, 583 U.S. 48 (2018)(we have stressed the need to "identify a case where an officer acting under similar circumstances . . . was held to have violated [federal law]"); *see also Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016)(internal quotation marks omitted). Indeed, "[t]he first three steps of the *Garcetti/Pickering* analysis," "are **issues of law**…" not issues of fact. *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 745 (10th Cir. 2010).

Plaintiff's Response does what the Supreme Court has continuously cautioned lower courts against — defining the "clearly established" prong of qualified immunity analysis at a high level of generality. *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Plaintiff has not even acknowledged that she must produce case law that defines her "clearly established rights." Plaintiff's Response merely quotes broad, generalized legal concepts without application to this case. In doing so, she has chosen to ignore her burden of producing

**Tenth Circuit** or **Supreme Court** case law that defines her claims with *particularity* through the lens of the Amended Complaint's factual allegations. *Ashcroft v. al–Kidd*, 563 U.S. at 741(In the final analysis, existing precedent must have placed the constitutional question **beyond debate**).[1] The very fact that courts may disagree on the "contours of existing law" is even enough to grant qualified immunity. *See City of Tahlequah, supra.*

Furthermore, the Amended Complaint lacks factual allegations to put **each** individual Defendant on notice as to what they are alleged to have done to violate the First Amendment. *See Robbins v. Oklahoma,* 519 F.3d 1242, 1249-50 (10th Cir. 2008)(requiring a Complaint to state what **each** individually sued Defendant is alleged to have done and explaining general allegations that "Defendants violated her rights" are not acceptable).

This particular requirement is extremely important here because one of the named Defendants is not a voting member of the Board. Indeed, Defendant Ziriax is not a voting member of the Board and therefore, he could not have violated Plaintiff's First Amendment rights. *See* OKLA. STAT. tit. 26 § 2-101(requirements for members of the Election Board); OKLA. STAT. tit. 26 § 2-

---

[1] To demonstrate that the law is clearly established, a party opposing qualified immunity must either "(1) identif[y] an on-point Supreme Court or published Tenth Circuit decision, or (2) show[ ] the clearly established weight of authority from other courts has found the law to be as the [party] maintains." *Perry v. Durborow,* 892 F.3d 1116, 1123 (10th Cir. 2018) *(quotations and citations omitted).*

101.6 (Defendant Ziriax as "Secretary of the Election Board" is not a voting member of the State Election Board). Any allegation against him, in his individual capacity, that he voted to remove Plaintiff from her state appointed position is "legally" inaccurate. Therefore, this Court must dismiss Ziriax from this lawsuit since no amendment to the Amended Complaint could possibly allege, he did anything to violate Plaintiff's First Amendment Free Speech right to adversely affect her employment.

As for the remaining Defendants, they must also be dismissed because Plaintiff's allegations are still too generalized to allege what each Defendant Board member did to violate Plaintiff's clearly established constitutional rights. Whether a statutory or constitutional right was clearly established at the time of the official's conduct is "an 'essentially legal question.'" *Crawford–El v. Britton*, 523 U.S. 574, 588 (1998) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526–29 (1985)). It is not enough simply to allege the violation of a clearly established but conceptually broad right, such as the right to free speech. *See al-Kidd*, 131 S. Ct. at 2084 ("We have repeatedly told courts ... not to define clearly established law at a high level of generality.") (citations omitted). Rather, "the right the official is alleged to have violated must have been 'clearly established' *in a more particularized, and hence more relevant, sense*: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*,

483 U.S. 635, 640 (1987); *see al-Kidd*, 131 S. Ct. at 2083 ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question **beyond debate**."). "Reasonable knowledge of the law means ... knowledge of present constitutional law [and] involves knowledge only of legal rules that were 'clearly established' at the time of the conduct at issue." *Harris v. District of Columbia*, 932 F.2d 10, 13 (D.C.Cir.1991) (citation omitted). Thus, "[w]hen properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.' "*al- Kidd*, 131 S. Ct. at 2085 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In response to Defendants' Motion to Dismiss, Plaintiff claims she has alleged a First Amendment Free Speech claim. She argues that her statements concerning the integrity of Oklahoma County's election counting process were made, not as a public employee, but rather as a private citizen. *See Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951 (2006) (illustrating the difference between speaking as a Citizen and speaking as an Employee). Here *Garcetti* is applicable.

In *Garcetti*, a Los Angeles County assistant district attorney, Ceballos, claimed that he was retaliated against by his supervisors for pointing out certain discrepancies in a search warrant used for a pending criminal case and then later testifying for the criminal defendant at a motion to suppress hearing. He sued his supervisor for retaliation claiming his actions and speech

were protected under the First Amendment. *Id*. at 414-15. The Supreme Court disagreed the speech was constitutionally protected because "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize [an] employee grievance." *Id*. at 420 (quoting *Conneck v. Myers*, 461 U.S. 138, 147 (1983)).

The *Garcetti* Court explained that "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Id*. at 418. "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Id*. "Public employees, moreover, often occupy trusted positions in society. When they speak out, they can express views that contravene governmental policies or impair the proper performance of governmental functions." *Id*. at 419. Such statements can be disruptive to the smooth operation of government and cause unnecessary public discord. *Garcetti* made clear that just because the speech is interoffice or concerns the person's employment, is not necessarily the dispositive issue in determining if it is protected speech or not. *Id*. at 420-21. Instead, the dispositive issue is whether "his expressions were made pursuant to his duties as [an employee]." *Id*. at 421. The Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the

Constitution does not insulate their communications from employer discipline." *Id.*

In this case, Plaintiff's allegations fit perfectly into the *Garcetti* analysis. She was appointed to her position as an alternate for the Oklahoma County Election Board. OKLA. STAT. tit. 26 § 2-111. According to the Amended Complaint, the State Election Board voted to remove her from that Board, because she spoke out about improprieties that occurred in Oklahoma County concerning the counting of absentee ballots. [Doc. 6, ¶ 8]; *see* OKLA. STAT. tit. 23 § 2-114 ("The Election Board shall have the authority to remove … any alternate member of any county election board at any time"). Yet, those allegations, whether made within the Election Board reporting process or outside the agency, are "statements pursuant to their official duties." *Garcetti*, 547 U.S. at 421; *see also Trimble v. Bd. of Cty. Comm'r of Tulsa Cty*, 728 F. App'x 789, 795 (10th Cir. 2018)("The proper focus is not on the recipient of the communication but on whether the speech stemmed from and was of the type that the employee was paid to do, regardless of the exact role the individual or entity to which the employee has chosen to speak.")(citing *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 747 (10th Cir. 2010).

Here, Plaintiff was an alternate County Election Board member. OKLA. STAT. tit. 26 § 2-110 and § 2-111. Her duties were to protect the integrity of the election process within the county. OKLA. STAT. tit. 26 § 2-116. If she believed

the absentee ballots counting process via remote viewing by CCTV was improper, then her official duty was to report it within the framework of the State Election rules and laws, not to spread unsubstantiated and irrelevant rumors to outside individuals that it was improper. Her allegations are within her official duties, and therefore, her statements were as an employee of the County election Board. *Casey v. West Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1329 (10th Cir. 2010) (holding that speech made pursuant to an employee's duty to report to her employer regarding the legality of the employer's operations was within the scope of her official duties).

Plaintiff has not produced any case law that could have alerted Defendants that their alleged actions, as pled in the Amended Complaint, would violate "clearly established law." She has not produced any case law that would have alerted Defendants that their actions of removing her as an Alternate County Election Board member for questioning the County Election Board's process of using CCTV to remotely view the counting process in the "September 12, 2023" and the "October 10, 2023" elections was improper. Her speech to outside individuals that such was improper ran directly counter to her official duties. *Casey,* 473 F.3d at 1329 (10th Cir. 2010) (holding that speech made pursuant to an employee's duty to report to her employer regarding the legality of the employer's operations was within the scope of her official duties).

Therefore, this Court must grant the Defendants qualified immunity and dismiss them from this lawsuit because such alleged speech was within her official duties, and therefore, she was speaking as an Employee, not a citizen. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.

Respectfully submitted,

/s/ Kevin L. McClure
**TRACY E. NEEL, OBA#33574**
**KEVIN L. McCLURE, OBA#12767**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:   405.521.3921
Facsimile:   405.521.4518
Email: tracy.neel@oag.ok.gov
          kevin.mcclure@oag.ok.gov
*Attorney for Defendants*

10 | P a g e

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 17th day of September 2024, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further that a true and correct copy of the foregoing document was sent via the ECF System to all counsel of record who are registered participants.

                                    /s/ Kevin L. McClure
                                    Kevin L. McClure